USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/22/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
   Annelise Osborne,

                              Plaintiff,

       -against-

                                               1:17-cv-01859 (ALC)

   Moody's Investors Service, Inc. and Nick
   Levidy in his official and individual capacities,   **OPINION & ORDER**

                             Defendants,
-----------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Annelise Osborne brings this action against her former employer Defendants Moody's Investors Service, Inc. ("Moody's" or "Defendant") and Nick Levidy ("Levidy") (collectively, "Defendants"), asserting, *inter alia*, claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e ("Title VII"), the New York State Human Rights Law, N.Y.S. Exec. L. § 296 ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 ("NYCHRL"). Defendants have moved for partial dismissal of the Complaint, seeking only to dismiss the discrimination and retaliation claims as well as all claims as to Defendant Levidy. For the foregoing reasons, Defendants' partial motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint and are presumed to be true for purposes of this motion to dismiss.

Annelise Osborne is a former female Senior Vice President at Defendant Moody's, an international leader in credit ratings and research and risk analysis. Am. Compl. ¶¶ 16-17. Defendant Nick Levidy is Managing Director for Structured Finance at Moody's Research Division and had supervisory authority over Osborne. *Id.* ¶ 19.

1

Plaintiff began working at Moody's New York office as an associate analyst in January 2004. *Id.* ¶ 20. Throughout her tenure with Moody's, Plaintiff received several promotions, resulting in her latest position, Senior Vice President in the CMBS group. *Id.* ¶ 21. Plaintiff was recognized as an outstanding employee and praised for her contributions. *Id.* ¶¶ 22-25. Despite her contributions, Plaintiff was consistently subjected to unlawful gender discrimination. *Id.* ¶ 26. Prior to taking maternity leave, Plaintiff was not offered a promotion because her then supervisor, Jim Duca, feared being "embarrassed" if Plaintiff decided to stay with her family and not return to work. *Id.* ¶ 38.

From 2013-2015, during her tenure as head of Defendant's Employee Resource Group for Women, female colleagues told Plaintiff that they had been overlooked for promotions in favor of less qualified male employees, received less compensation than their male peers, and subjected to "grossly inappropriate comments." *Id.* ¶¶ 28-29. At the same time, Plaintiff herself was also subjected to inappropriate and demeaning behavior, including "male colleagues ogling her body and spreading malicious rumors about her." *Id.* ¶ 30. In late 2014, Plaintiff was told that she could not bring her children into the office, even though male employees were allowed to do so. *Id.* ¶ 31.

In or around September 2014, Plaintiff's team learned of Defendant's erroneous bond rating, in violation of Defendant's established practices and the Securities Exchange Act of 1934. *Id.* ¶¶ 46-47. Plaintiff contacted Defendant's Senior Vice President, Joe Baksic, to inform him of the error. *Id.* ¶¶ 49-50. Upon doing so, Plaintiff learned that Baksic's team was already aware of the error for approximately one year, but had not corrected it due to the risk of delaying a deal the team was in the midst of closing. *Id.* ¶¶ 50-51. Consequently, Plaintiff reported her findings to Defendant's Credit Policy department, resulting in an investigation by Defendant's outside

2

counsel and the SEC. *Id.* ¶¶ 54-56. After Moody's resolved the bond rating error, Plaintiff was openly criticized for her actions by Moody's employees, including Levidy. *Id.* ¶¶ 58-61. Specifically, Levidy blamed Plaintiff for the loss of his team's bonus by implying that she did not follow the correct error protocol. *Id.* ¶¶ 61-62.

In her January 2015 performance review, Michael Gerdes, Managing Director of CMBS, told Plaintiff that she needed to stop "excelling" in her role because it was causing her male peers to resent her. *Id.* ¶ 35. Additionally, Gerdes warned Plaintiff that employees in the CMBS Surveillance group were making disparaging comments about her. *Id.* ¶ 63. As a result, Plaintiff suffered severe damage to her reputation within the company and in the industry at large. *Id.* ¶ 64. These events led Plaintiff to contact Moody's Associate General Counsel, Maral Kazanjian in March 2015 to protect and address workplace attacks on her reputation. *Id.* ¶ 65. Kazanjian informed Plaintiff that she would have to raise the issue directly with Levidy. *Id.* ¶ 66. Following that advice, Plaintiff spoke with Levidy about her concerns, to which he responded by laughing and dismissing them as "petty paranoia." *Id.* ¶ 68.

Plaintiff was eventually promoted to Senior Vice President, after being forced to wait over a year after Moody's promoted a less qualified male colleague to the same position. *Id.* ¶ 39. In August 2015, Plaintiff requested permission to engage in an outside business interest, specifically to sit on the Board of Directors at Ethan Allen, and followed the appropriate procedures for notifying Moody's. *Id.* ¶¶ 72-73. Plaintiff had previously submitted two outside business requests, following the exact same procedure, and received approval without incident.[1] *Id.* ¶¶ 74-75; Pl. Opp'n Mem. 4-5. Plaintiff submitted the request to serve on the Board of

---

[1] The Complaint does not make clear whether the second request for an outside business opportunity was approved by Moody's or not. The third request was in August 2015, but the Complaint states that "[w]hen the Company did object to the third request made by Ms. Osborne in *April 2015*, Ms. Osborne respected this decision, and declined the offer to join the Board of Directors." ¶ 76 (emphasis added).

3

Directors through her Moody's email account, *id.* ¶ 78, and Moody's informed Plaintiff that her application to join the Board of Directors was a violation of company policy that warranted termination for cause. *Id.* ¶¶ 73-74; 79. In the fall of 2015, Moody's asked Plaintiff to accept an administrative role, "historically reserved for women that the Company was trying to sideline as a precursor to forcing their departure," but Plaintiff declined the offer. *Id.* ¶ 41. Plaintiff was subsequently terminated on November 13, 2015. *Id.* ¶ 71.

On March 7, 2016, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging sex discrimination in violation of Title VII. *Id.* ¶ 10. Thereafter, Plaintiff received a notice of right to sue from the EEOC, and initiated this action on March 13, 2017. On June 8, 2017, Plaintiff amended her Complaint and Defendant moved pursuant to Fed. R. Civ. P. 12(b)(6) to partially dismiss the Complaint.

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). The court "may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted).

## DISCUSSION

### Sex Discrimination

As a threshold matter, Title VII requires an aggrieved party to file a charge of discrimination with either the Equal Employment Opportunity Commission or New York State Division of Human Rights ("NYSDHR") within 300 days of the alleged act of discrimination. 42 U.S.C. § 2000e–5(e)(1). The failure to do so will result in those claims being time barred. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996). Osborne filed her Charge of Discrimination with the EEOC on March 7, 2016. Osborne bases her sex discrimination claims on two acts: 1) failure to promote and 2) termination. Her failure to promote claim is dismissed for failing to specify when she was specifically passed over for promotion in favor of a man. Because all claims arising before May 12, 2015 (*i.e.*, 300 days

before March 7, 2016) are time-barred, the only timely claim is the one for discriminatory termination on November 13, 2015.

As to the merits, in order to survive a motion to dismiss, a plaintiff alleging sex discrimination under Title VII or NYSHRL must establish (1) the plaintiff is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) there is "at least minimal support for the proposition that [her] employer was motivated by discriminatory intent."[2] *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). A plaintiff can provide minimal support for an inference of discrimination through, for example, an employer's "invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Blige v. City Univ. of N.Y.*, 1:15-cv-08873 (GBD) (KHP), 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017) (quoting *Littlejohn*, 795 F.3d at 312).

The standard for alleging sex discrimination under NYCHRL is more lenient than the federal/state standard. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109-110 (2d Cir. 2013). To establish liability under the NYCHRL, a plaintiff need only demonstrate "differential treatment —that she is treated 'less well'—because of a discriminatory intent." *Makinen v. City of N.Y.*, 167 F. Supp. 3d 472, 483 (S.D.N.Y. 2016) (quoting *Mihalik*, 715 F.3d at 110). A plaintiff, thus, must "plead facts sufficient to support an inference that [she] has been treated less well at least in part *because of* a protected trait." *Bright-Asante v. Saks & Company, Inc.*, 242 F. Supp. 3d 229, 242 (S.D.N.Y. 2017) (internal quotation marks omitted).

The first three elements are not in dispute. The only issue is whether the adverse

---

[2] The standard is the same for NYSHRL claims because employment discrimination claims under the NYSHRL are analytically identical to claims under Title VII. *Cooper v. N.Y. State Dep't of Labor*, 819 F.3d 678, 680 (2d Cir. 2016).

employment action was motivated by a discriminatory intent (under state and federal statutes) or that she was treated less favorably at least in part because of her sex (under the NYCHRL).

Plaintiff lists the following to support her termination claim: 1) male colleagues at unidentified times "ogl[ed] her body" and "spread[] malicious rumors about her" (Am. Compl. ¶ 30); 2) at an unidentified time a former supervisor told her that she would not be receiving a promotion because he feared being "embarrassed" if Plaintiff did not return from maternity leave (*id.* ¶ 38); 3) in late 2014, she was told by an unidentified individual that she could not bring her children to work, but men could do so (*id.* ¶ 38); 4) in 2015, her direct supervisor told her during a performance review she needed to stop "excelling" because her performance was building "resentment" among her male peers (*id.* ¶ 35). Plaintiff points to these series of statements and acts to show discriminatory intent by Defendant. However, she fails to demonstrate a nexus exists between the allegedly discriminatory statements or acts and Moody's decision to terminate her. *Yan v. Ziba Mode Inc.*, No. 15-cv-47 (RJS), 2016 WL 1276456, at *4 (S.D.N.Y. Mar. 29, 2016).

In evaluating whether statements are probative of discriminatory intent, "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). However, there is no bright-line rule for when remarks become "too attenuated" to be probative of discriminatory intent. *Tolbert v. Smith*, 790 F.3d 427, 437 (2d Cir. 2015). In evaluating the comments, courts examine the following factors: "(1) who made the remark (i.e., whether it was a decision-maker, a supervisor, or a low-level co-worker); "(2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e.,

7

whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149-50 (2d Cir. 2010).

These statements and acts are far too attenuated both temporally and contextually from her termination and thus cannot be related to the decision to terminate her employment in November 2015. "District courts in this Circuit have found that a three month lapse between alleged discriminatory statements and an adverse employee action is too long a gap to find the remark probative of discrimination." *See Sethi v. Narod*, 12 F. Supp. 3d 505, 540 (E.D.N.Y. 2014) (listing cases).[3] Here, the Complaint does not provide times for most of the remarks, but the closest remark is March 2015—eight months away from her November 2015 termination. Critically, Plaintiff has not explained how these alleged comments—scattered over time and in different contexts—relate to the decision to terminate her employment in November 2015. *See Yan*, 2016 WL 1276456, at *4; *Williams v. Victoria's Secret*, No. 15-cv-4715 (PGG) (JLC), 2017 WL 384787, at *9 (S.D.N.Y. Jan. 27, 2017), *report and recommendation adopted*, 2017 WL 1162908 (S.D.N.Y. Mar. 28, 2017) (dismissing Title VII, NYSHRL, and NYCHRL discrimination claims where plaintiff failed to "describe the remarks as being linked to an employment decision").

In addition to these comments, Plaintiff alleges that she was repeatedly denied promotions that went to less qualified male employees. Am. Compl. ¶¶ 36-41. Although the failures to promote are not independently actionable, a court can consider these acts as "background evidence" in support of her termination claim. *See, e.g., Fanelli v. New York*, 51 F.

---

[3] Plaintiff does not cite this case, but *Tolbert v. Smith*, 790 F.3d 427, 437 (2d Cir. 2015) is not to the contrary. There, a principal, and thus de facto decision maker, made three remarks clearly evincing racial bias within a single school year, with one remark occurring within three months of the principal's decision to deny tenure to the black teacher.

8

Supp. 3d 219, 228-29 (E.D.N.Y. 2014) (noting that acts occurring outside the statute of limitations period may not be independently actionable, but could be used as background evidence in support of a timely claim); *Taylor v. Seamen's Soc. for Children*, No. 12 Civ. 3173(PAE), 2013 WL 6633166, at *9 (S.D.N.Y. Dec. 17, 2013) (same). Plaintiff provides no details about what specific position she sought, who was promoted to that position, when the promotion was denied to her, and—crucially—how it all relates to her eventual termination. Plaintiff also alleges that in the fall of 2015 she was offered an alleged demotion, which she declined, but does not provide any specific information about the job. Accordingly, because of the paucity of information about the promotions and alleged demotion, the "background evidence" fails to support an inference of discrimination.

Moreover, Plaintiff's complaint lacks specificity regarding any comparators. Plaintiff conclusorily asserts "no similarly situated male employees were terminated for cause as result of making a request for outside employment," Am. Compl. ¶ 81, and provides no facts about her alleged comparators such as their identities, job performance, or responsibilities. *Blige*, 2017 WL 498580, at *9 ("Numerous courts within the Second Circuit have granted motions to dismiss disparate treatment claims where the complaint was entirely devoid of any details regarding the purported comparators, *e.g.*, who they are, what their positions or responsibilities were at the company, how their conduct compared to plaintiffs' or how they were treated differently by defendants.") (internal quotation marks omitted). Plaintiff has not alleged any disparate or differential treatment because she does not even point to any other male employee who made an outside business request and took actions in furtherance of that request without first receiving permission and then continued to work at Moody's.

Ultimately, Plaintiff alleges a "pattern of gender based discrimination" at Moody's that culminated in her termination. But without the requisite specificity, it is a leap to conclude that her discharge was a part of that pattern. Accordingly, Plaintiff's sex discrimination claims under Title VII, NYSHRL, and NYCHRL are dismissed.

### Hostile Work Environment

A plaintiff bringing a claim for a hostile work environment "must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks omitted). At the motion to dismiss stage, "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)). The incidents referred to in the complaint "[generally] must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

Plaintiff simply refers to stray remarks made by different people in different contexts at different times throughout her career, and her complaint is devoid of the frequency or severity of such occurrences. *Cowan v. City of Mount Vernon*, No. 14-cv-8871 (KMK), 2017 WL 1169667, at *4 (S.D.N.Y. Mar. 28, 2017). The incidents she refers to are simply episodic, and "not sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *See Batiste v. City Univ. of N.Y.*, No. 16-cv-3358 (VEC), 2017

10

WL 2912525, at *9 (S.D.N.Y. July 7, 2017). To the extent that Plaintiff alleges similar conduct to other women, her allegations also suffer from similar defects, namely no details about who made purported comments, the frequency of the comments, or the severity of the comments. Accordingly, Plaintiff's hostile work environment claims under Title VII and NYSHRL are dismissed.

Under the lower threshold of the NYCHRL, however, Plaintiff does state a plausible hostile work environment claim. A hostile work environment claim under the NYCHRL "does not require either materially adverse employment actions or severe and pervasive conduct" in order to state a claim. *Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 69 (S.D.N.Y. 2015) (quoting *Mihalik*, 715 F.3d at 114). Plaintiff merely has to show unequal treatment based upon sex. *Mihalik*, 715 F.3d at 114. Plaintiff has alleged widespread institutionalized discrimination against herself and other women and thus "evidence of unwanted gender-based conduct." *Lenart*, 131 F. Supp. 3d at 69 (internal quotation marks omitted). This is sufficient to state a hostile work environment claim under the NYCHRL.

## Unlawful Retaliation

A plaintiff alleging a retaliation claim under Title VII and NYSHRL must demonstrate that "(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protective activity and that adverse action." *Kelly v. Howard I. Shapiro & Associates Consulting Engineers, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013). To demonstrate a causal connection "a plaintiff must plausibly plead a connection between the act and his engagement in protected activity." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015).

Here, Plaintiff fails to allege a causal connection between her complaints about gender discrimination and her eventual termination. Plaintiff does not plead any facts linking the complaints with her eventual termination, such as, for example, that anyone involved in her termination knew of her complaints. *Mazurkiewicz v. NYC Health & Hosps. Corp.*, No. 09 CIV 5962 (WHP), 2010 WL 3958852, at *5 (S.D.N.Y. Sept. 16, 2010).

Additionally, there is no temporal proximity. "[A] plaintiff can indirectly establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action." *Gorman-Bakos v. Cornell Co-op. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001) (internal quotation marks omitted). In the Second Circuit, "[c]laims of retaliation are routinely dismissed when as few as three months elapse between the protected [ ] activity and the alleged act of retaliation." *Leshinsky v. Telvent GIT, S.A.*, 942 F. Supp. 2d 432, 450 (S.D.N.Y. 2013) (quoting *Nicastro v. Runyon*, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) (collecting cases)). Only where an employee pleads other facts linking a connection between her protected activity and her termination, do courts consider temporal proximity to be less determinative. *Id.*

Plaintiff's timeline is as follows. First, in March 2015, Plaintiff complained of gender discrimination to the Associate General Counsel. Second, in August 2015, Plaintiff submitted her Outside Business Request to be a director on the Board of Ethan Allen. Third, in the fall, Plaintiff was offered an alleged demotion, which she declined to accept. Finally, in November 2015, she was terminated for the purported violation of policy. In the absence of any facts pleading a link between her March 2015 complaints and her November termination, the eight month lapse is dispositive and negates any inference of causation. Moreover, the one intervening event—her application to join the Board of Directors of Ethan Allen—further defeats any causal

connection. *Anselm v. Diamond Packaging*, No. 14-cv-6388 (CJS), 2015 WL 2095774, at *7 (W.D.N.Y. May 5, 2015) (despite close temporary proximity, intervening event of plaintiff's suggestions of financial improprieties to the owner and conversation with owner's assistant concerning conversation with owner negated a causal nexus between termination and the protected activity) (citing *Nolly v. Swiss Reinsurance Am. Corp.*, 857 F. Supp. 2d 441, 461 (S.D.N.Y. 2012)). Accordingly, Plaintiff's unlawful retaliation claims under the NYSHRL and Title VII are dismissed.[4]

## Claims Against Levidy

*Unlawful Retaliation*

Plaintiff brings an unlawful retaliation claim against Levidy in his individual capacity. Both the NYSHRL and the NYCHRL provide for individual liability for retaliation. *See Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012). Under NYSHRL, it is "an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article." N.Y. Exec. Law § 296(7). The NYCHRL, by contrast, "provides a broader basis for direct individual liability than the NYSHRL" because it applies to employees "regardless of ownership or decisionmaking power." *Malena*, 886 F. Supp. 2d at 366; *see* N.Y.C. Admin. Code § 8–107(1)(a). Liability is limited to those individual employees "who actually participate[d] in the conduct giving rise to plaintiff's [retaliation] claim." *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 662 (E.D.N.Y. 2015). Because Plaintiff fails to allege how

---

[4] Defendants do not move to dismiss Plaintiff's retaliation claim against Moody's under the NYCHRL. Defs. Mem. 2 n.3. The standard for a retaliation claim under NYCHRL is "purposely more permissive" than that under the NYSHRL and Title VII. *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 337 (S.D.N.Y. 2010).

13

Levidy was involved in the decision to terminate her, Plaintiff's retaliation claims against Levidy are dismissed.

*Aiding and Abetting*

Plaintiff asserts that Levidy should be held personally liable under the NYSHRL and the NYCHRL for aiding and abetting discrimination against Plaintiff. Under the NYSHRL and the NYCHRL, it is unlawful "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this [provision], or to attempt to do so." N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code § 8–107(6). Under both statutes, actual participation in conduct giving rise to a discrimination claim is required to support liability. *Feingold v. New York*, 366 F.3d 138, 158-59 (2d Cir. 2004). Aiding and abetting is only a viable theory where an underlying violation has taken place. *Falchenberg v. New York State Dep't of Educ.*, 338 Fed. App'x 11, 14 (2d Cir. 2009). Therefore, because this Court has dismissed Plaintiff's discrimination claims for failure to state a claim, her derivative claims against Levidy must also be dismissed as well. *See Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 253 (E.D.N.Y. 2015).

Plaintiff's claim against Levidy for aiding and abetting a hostile work environment under the NYCHRL is also dismissed because she has failed to plead that Levidy's actions were motivated by gender. Plaintiff alleges that Levidy implied to other employees that Osborne "acted improperly in filing the error protocol," dismissed her concerns "about the damage to her professional reputation" over the correction of a bond rating as "petty paranoia," and blamed her for his team being punished for the rating error. None of these actions plausibly suggest that sex was a motive.

14

## CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss is GRANTED in part and DENIED in part. The following claims are dismissed: (1) Title VII, NYSHRL, and NYCHRL sex discrimination claims; (2) Title VII and NYSHRL hostile work environment claims; (3) Title VII and NYSHRL retaliation claims against Moody's; and (4) all claims against Levidy. The NYCHRL hostile work environment claim survives.

**SO ORDERED.**

**Dated: March 22, 2018**
   **New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**